UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

VERNON HAROLD MAY,                                  Case No. DT 09-04644
                                                    Hon. Scott W. Dales
          Debtor.
_____/

FIA CARD SERVICES, N.A.,

          Plaintiff,                                Adversary Proceeding
                                                    No. 09-80323
v.

VERNON HAROLD MAY,

          Defendant.
_____/

<u>OPINION AND ORDER AFTER TRIAL</u>

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

## I. INTRODUCTION

This matter came before the court on the Complaint of FIA Card Services, N.A. (the "Plaintiff") against Defendant/Debtor Vernon Harold May ("Defendant" or "Mr. May"). The court held a trial on Wednesday, April 21, 2010 in Traverse City, Michigan. The parties submitted written closing arguments. The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

## II. JURISDICTION

The court has jurisdiction over the Defendant's bankruptcy case pursuant to 28 U.S.C. § 1334(a). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I)

because it involves a request to except a particular debt from discharge. In addition, the matter is within the automatic referral of bankruptcy proceedings to this court from the United States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).

### III. EVIDENCE AND ANALYSIS

The Plaintiff commenced this proceeding under 11 U.S.C. § 523(a)(2)(A) to except from discharge a debt in the amount of $5,583.79 (the "Debt") that the Defendant incurred using a credit card issued to him long before he filed his bankruptcy petition. Given the timing of the transactions under review, the Bankruptcy Code raises a presumption against discharge with respect to a substantial portion of the Debt. *See* 11 U.S.C. § 523(a)(2)(C)(i)(II); Fed. R. Evid. 301.

Relying on 11 U.S.C. § 523(a)(2)(A), the Plaintiff must prove the following elements of its case by a preponderance of the evidence:

1. The Defendant obtained money or property through a material misrepresentation he knew was false, or that he made with gross recklessness as to its truth;

2. The Defendant intended to deceive the Plaintiff;

3. The Plaintiff justifiably relied on the false representations; and

4. The Plaintiff's reliance was the proximate cause of its loss.

*See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993); *Grogan v. Garner*, 498 U.S. 279 (1991). In a case premised on credit card transactions, "the representation made by the cardholder . . . is not that he has an ability to repay the debt; it is that he has an intention to repay." *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.)(citations omitted), *cert. denied*, 525 U.S. 978 (1998). Courts review the totality of the

circumstances to determine, as a matter of fact, whether a debtor subjectively intended to repay the debt when he incurred it. *Id.*

At trial, the Plaintiff established the fact of the charges and the amount thereof by relying on the Defendant's schedules, admitted under Fed. R. Evid. 201 and 801(d)(2), and the Defendant's pretrial admissions under Fed. R. Civ. P. 36. In addition, the Defendant's own testimony confirmed the same. The principal issue in dispute at trial was whether Mr. May made material misrepresentations regarding his intent to repay the charges he incurred, and whether he intended to deceive the Plaintiff.

The court had the opportunity to judge the Defendant's demeanor and credibility, and fully credits his testimony. Specifically, the court finds that when he incurred the charges at issue, he actually intended to repay the Plaintiff in accordance with the parties' agreement.

Mr. May explained that during this time in his life, he was experiencing medical difficulties involving, ultimately, the replacement of both knees and the prospect of shoulder surgery. Both conditions, while they persisted, prevented him from earning a living. Prior to filing, he typically derived his regular income from working at a saw mill and from conducting a painting business during the saw mill's off-season. Without contradiction, he also testified that because his employer's business was cyclical, it was not uncommon for the employer to reduce his hours or lay him off during the winter months, as it did during the period he incurred the Debt. Though the saw mill typically laid him off during the winter, it would typically re-hire him in the spring, when business picked up. In late 2008, around the time he incurred the Debt, he was unable to work not only because of the saw mill's slow season, but also because of the difficulties he was experiencing with his knees and shoulder. He applied for disability income.

Mr. May further testified that it was his intention to have the knee surgery and to convalesce during the winter of 2008 and early spring 2009.  He fully intended to return to work at the saw mill and in connection with his painting business in the spring of 2009, as he did in past years, and repay the Debt he had incurred in the meantime.  Unfortunately, he was unable to return to work, contrary to his plans and his employment history.   Mr. May now receives disability income through the Social Security Administration. The court notes, as Plaintiff did in its closing brief, that Mr. May applied for benefits in late 2008.

Mr. May consistently made the minimum payments on the account at issue in this proceeding as well as other debts, and earned a favorable credit rating. As a result of the economy and his physical limitations, however, he encountered difficulties meeting his financial obligations.  He eventually filed a voluntary petition with the court on April 20, 2009.

Citing *Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082 (9th Cir. 1996), the Plaintiff urges the court to find fraudulent intent from the fact that Mr. May used a portion of the cash advances to repay prior credit card balances. This argument fails for several reasons.

Applying the twelve factor totality of the circumstances test referred to in *Eashai*[1] does not assist the Plaintiff because the record does not support findings with respect to most of the factors from which the court might have inferred fraudulent intent.  In this case, the Defendant credibly testified that he intended to have surgery to remove his disability so he could return to work once the saw mill's business resumed, and pay the Debt. Instead, after one surgery, he discovered he needed at least two more, and by then the economic slow-down prevented the saw mill from re-hiring him, contrary to Mr. May's experience in years past.

---

[1] *See Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082 (9th Cir. 1996) *and Citibank South Dakota, N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653 (9th Cir. BAP 1988).

Mr. May did not purchase luxury items, and did not otherwise live lavishly.  Instead, he used the advances mainly for necessities. From his testimony, the court infers that he regarded his minimum monthly payment obligation as part of his other necessary living expenses, such as food, fuel, housing, and transportation expenses which he paid using the proceeds of Plaintiff's cash advances.  The evidence admitted at trial does not support any finding of "kiting" or a "Ponzi" scheme, contrary to Plaintiff's unwarranted suggestion in its closing brief.  Rather, it appears that a relatively unsophisticated borrower used assets (fungible loan proceeds) to pay expenses that he regarded as payment priorities -- including his Debt to the Plaintiff. The court will not punish Mr. May for repaying part of his Debt, even if the source of the payment could be traced to the cash advances rather than, for example, to his wife's modest earnings as a hotel chambermaid.[2]

The court has considered the Plaintiff's other arguments in its closing brief and finds them without merit.

### IV. CONCLUSION AND ORDER

For the reasons stated above, the court also finds pursuant to 11 U.S.C. § 523(d) that Plaintiff's position was not substantially justified.  The Plaintiff's meager evidence introduced at trial -- bankruptcy schedules and Rule 36 admissions -- were directed almost exclusively toward establishing Mr. May's inability to repay the Debt, rather than his intent.  *See Rembert*, 141 F.3d at 281 ("To measure a debtor's intention to repay by her ability to do so, without more, would be contrary to one of the main reasons consumers use credit cards: because they often lack the ability to pay in full at the time they desire credit.").

---

[2] After hearing Mr. May's testimony, the court regards the Plaintiff's argument as ironic: the Plaintiff would use the fact that Mr. May made payments as evidence of intent to deceive, while also pointing to the fact of non-payment as evidence of an undisclosed intent not to repay the Debt.

Therefore, upon timely motion under Fed. R. Civ. P. 54(d)(2), the court will consider awarding costs and a reasonable attorney's fee under 11 U.S.C. § 523(d). In the meantime, the court will prepare a judgment declaring that the Debt will be discharged in accordance with 11 U.S.C. § 727. *See* Fed. R. Civ. P. 58(e).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall serve a copy of the judgment to be entered, together with this Opinion and Order After Trial, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4, upon FIA Card Services, N.A., Lawrence G. Reinhold, Esq., Vernon May, and David M. Kipley, Esq.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: May 03, 2010**